United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 8, 2006**

Charles R. Fulbruge III
Clerk

In the
# United States Court of Appeals
## for the Fifth Circuit

———————

m 05-50490

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

EDUARDO HERNANDEZ,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

———————

m 05-50493

———————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUAN CARLOS DIAZ,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

—————————

m 05-50494

—————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JONATHAN SANCHEZ,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

—————————

m 05-50495

—————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GERARDO RESENDIZ,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

CRISTIAN FELIPE QUEVEDO,

Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Texas
m 2:03-CR-253-2

Before SMITH, GARZA, and CLEMENT,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Eduardo Hernandez, Juan Diaz, Jonathan Sanchez, Gerardo Resendiz, and Cristian Quevado appeal the partial denial of their motion to suppress, on Fourth Amendment grounds, evidence obtained pursuant to the Border Patrol's roving stop of their vehicles on suspicion

of illegal smuggling activity. We affirm.

I.

On the morning of March 5, 2003, each of the appellants, as well as two other defendants, Michael Santoyo and Luis Alvarez, were driving on highways in the vicinity of Dryden, Texas. The vehicles operated by the defendants were pick-up trucks, extended-cab trucks, and SUV's.

Border Patrol and Bureau of Immigration and Customs Enforcement ("BICE") agents stopped each of the vehicles within fifty miles of the Mexican border based on suspicious ac-

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

tivity they had observed.[1] Between about 4:20 and 5:20 a.m. the agents watched the vehicles, apparently operating in tandem, drive first toward and then away from the border. Because (1) the number of vehicles was highly unusual for the normally-deserted roads in the area, especially given the time of day, (2) the vehicles followed one another (approximately one mile apart), making all of the same turns, (3) each of the vehicles had a CB radio antenna (a known characteristic of smuggling convoys), (4) some of the drivers appeared to be spying on or attempting to distract the attention of law enforcement, and (5) the roads on which the vehicles were traveling were notorious drug- and alien-smuggling routes, the agents eventually pulled each vehicle over and questioned each driver regarding his travel plans.

After learning the defendants' identities, listening to their imprecise descriptions of their travel plans, detecting a pungent body odor in one of the vehicles, and discovering CB radios, multiple cell phones, a tarp, and water jugs in two of the vehicles,[2] the agents became convinced that the defendants were part of the Nolasco-Resendiz Organization, an alien-smuggling operation based in Houston and known for employing tactics similar to what the agents had observed.

Because of this suspicion, the agents, who already had placed Resendiz and Sanchez in patrol cars, took the keys from the remaining defendants and placed them on the hood of each car while defendants remained in their vehicles. The agents then decided to take Resendiz and Sanchez to the Sanderson Border Patrol Station and, returning their keys, told the remaining defendants to follow them there. At the station, defendants were handcuffed to their steering wheels. The agents led them inside the station one at a time for further questioning.

During questioning, Santoyo told the agents that he and the others were in the process of smuggling aliens that morning. Santoyo also gave the agents the possible location of illegal aliens that he and the other defendants had dropped off on the side of the highway to avoid being caught by law enforcement. A large group of aliens was subsequently found in the area Santoyo had specified.

Defendants were indicted for transporting illegal aliens in violation of 8 U.S.C. § 1324 and aiding and abetting the same in violation of 18 U.S.C. § 2. Santoyo pleaded guilty of the first count of the three-count indictment, charging him with aiding and abetting the illegal transportation of aliens in violation of §§ 1324(a)(1)(a)(ii) and(a)(2). The remaining

---

[1] The officers who observed the relevant activities and were involved in stopping the vehicles were BICE special agent Adam Wilson, BICE criminal investigator Armando Montes, Jr., and Border Patrol agents Kelly Helms and Santiago Gonzalez. At the time, Wilson had five and one-half years of experience as a BICE agent, preceded by three years of experience as a Border Patrol agent. Montes had been a criminal investigator with BICE for seven years, and before that was a Border Patrol agent for six years. Gonzalez had been employed by Border Patrol for fifteen years. Helms had three years of experience as a Border Patrol agent.

[2] The validity of the initial search of the two relevant vehicles, separate from the larger question (continued...)

[2](...continued) of whether the stop of each vehicle was supported by a reasonable suspicion of criminal activity, is not an issue in this case.

4

defendants, Hernandez, Diaz, Sanchez, Resendiz, Quevado, and Alvarez, filed a motion to suppress all evidence against them, arguing that the initial investigatory stops of their vehicles were not supported by a reasonable suspicion of criminal activity and that their continued detention constituted unlawful arrests without probable cause. The motion sought to suppress even the statements of Santoyo, who neither joined the motion nor otherwise challenged his stop or arrest.

The district court granted in part and denied in part the motion to suppress. The court ruled that each initial stop was supported by reasonable suspicion and that all information discovered during those stops was therefore admissible. The court also held that the subsequent detentions of the defendants, starting when Resendiz and Sanchez were placed in patrol cars and the agents confiscated the car keys of the remaining defendants, were unlawful arrests unsupported by probable cause. The court ruled, however, that the movants did not have standing to contest the admissibility of Santoyo's post-arrest statements because his arrest did not violate their Fourth Amendment rights.

Hernandez, Diaz, Sanchez, Resendiz, and Quevado subsequently entered conditional guilty pleas, pending the outcome of their appeal of any suppression issues. These defendants now appeal the court's ruling on the validity of the initial investigatory stops and on their standing to challenge the admissibility of Santoyo's statements. The government does not appeal the court's ruling regarding the unlawfulness of the continued detentions.

## II.

"We use a two-tiered standard of review for appeals from the denial of a motion to suppress: Factual findings are accepted unless clearly erroneous, and the district court's ultimate conclusion as to the constitutionality of law enforcement action is reviewed *de novo*." *United States v. Jackson*, 390 F.3d 393, 396 (5th Cir. 2004), *vacated*, 544 U.S. 917 (vacating judgment in light of *Booker*), *judgment reinstated*, 138 F. App'x 632 (5th Cir.), *cert. denied*, 126 S. Ct. 317 (2005).

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "A United States Border Patrol agent's temporary detention of an occupant of a vehicle for investigatory purposes while on roving patrol is constitutional if, at a minimum, the agent reasonably suspects that an occupant of the vehicles is involved in illegal activity." *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

We agree with the district court that the initial stop of each defendant was supported by a reasonable suspicion of criminal activity. In *United States v. Brignoni-Ponce*, 422 U.S. 873, 884-85 (1975), the Court explained that

[a]ny number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant. They also may consider information about recent illegal border crossings in the area. The driver's behavior may be relevant, as erratic driving or

5

obvious attempts to evade officers can support a reasonable suspicion. Aspects of the vehicle itself may justify suspicion . . . . In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling.

(Internal citations and quotations omitted.)

Given the wealth of factors that Border Patrol and BICE agents are allowed to consider, we would be hard-pressed to determine that the actions of the agents in this case were unreasonable. The number, behavior, and characteristics of the defendants' vehicles, particularly considering that the area in which they were traveling was a notorious alien-smuggling route, led the experienced agents to suspect foul play. The agents in fact spent an hour observing the defendants' actions before pulling the vehicles over, gathering enough information to allow what initially may have been a mere hunch to grow into reasonable suspicion.

We likewise agree with the district court that the appellants lack standing to challenge the admissibility of Santoyo's statements on Fourth Amendment grounds. As the district court held, appellants cannot establish that Santoyo's statements were the fruits of their own illegal arrests; rather, they were the fruits of Santoyo's separate arrest, which he has not challenged. "Fourth Amendment rights are personal rights," and "suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *Coconspirators and codefendants have been accorded no special standing.*" *Alderman v. United States*, 394 U.S. 165, 171-72, 174 (1969) (emphasis added).

Accordingly, we adopt the reasoning and conclusions of the district court's thorough order of June 4, 2004, and we AFFIRM the partial denial of the motion to suppress.